UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER BUSBY,<br>　　Plaintiff(s),<br>v.<br>LORA CODY,<br>　　Defendant(s). | Case No.: 2:19-cv-01422-APG-NJK<br><br>**ORDER** |

　　On November 13, 2019, the Court dismissed Plaintiff's complaint with leave to amend for violating Fed.R.Civ.P. 8. Docket No. 7. The Court advised Plaintiff that a properly pled complaint must provide a short and plain statement of the claim that shows that the pleader is entitled to relief. *Id.* at 2 (citing Fed.R.Civ.P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, "[a]lthough Rule 8 does not require detailed factual allegations, it demands 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]o comply with Rule 8, a complaint must set forth coherently who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1995)). Although the Court construes pleadings from *pro se* litigants liberally, such litigants must still comply with the basic requirements of Rule 8. *Montgomery v. Las Vegas Metropolitan Police Dept.*, 2014 WL 3724213, at *3 n.3 (D. Nev. July 28, 2014).

　　Pending before the Court is Plaintiff's "amended memorandum of points and authorities." Docket No. 9. The Court liberally construes this filing as an amended complaint because Plaintiff is *pro se*. Plaintiff sues an unspecified number of unnamed Las Vegas Metropolitan Police officers in their individual capacity. *Id.* at 1, 5.

　　Plaintiff alleges that, on December 3, 2015, his friend drove him to a police impound lot to pick up his vehicle. *Id.* at 2. Plaintiff alleges that, while in the impound lot's lobby, he, after identifying himself, was put into handcuffs by two police officers. *Id.* Plaintiff further alleges that

the officers took him outside, where another officer was, and that, after some discussion, Plaintiff was arrested because of an outstanding warrant. *Id.*

Plaintiff alleges that, about 30 minutes later, the officers asked him what car he had come in, who else was in it, and his relationship with anyone in it. *Id.* Plaintiff further alleges that the officers then asked him if they could search the car and that he said "no" because it was not his and because his friend's kids were in it. *Id.* Plaintiff alleges that an officer then told him that they wanted to search the car for "a dead baby." *Id.*

Plaintiff alleges that an officer approached the car and asked Plaintiff's friend to get out. *Id.* at 3. Plaintiff further alleges that, "according to the conversations and phone calls" between Plaintiff and his friend:

- the officer asked Plaintiff's friend "if he could search her car to secure the scene;"
- she said no;
- the officer told her that they "need[ed] to search the car for a dead baby;"
- she said that there was no dead baby and that only her kids were in the back seat;
- "[t]he officer told her that [Plaintiff] had consented to search her car and it was in her [kids'] interest that she allow it before they impound the vehicle;" and
- "[s]he complied, saying she guessed she didn't have a choice anymore."

*Id.* Plaintiff alleges that the officers then searched only the trunk, where they found luggage, which was his. *Id.*

Plaintiff alleges that the officers asked him if they could search his luggage and he said "no." *Id.* Plaintiff further alleges that, after a few other questions, the officers said that they needed to search his luggage to check for the dead baby. *Id.* Plaintiff alleges that the officers then searched his luggage and found his laptop. *Id.* Plaintiff further alleges that "[t]he officers never mentioned why they were seizing the laptop other than they were going to confiscate it." *Id.* at 4.

Plaintiff alleges that the laptop was used as evidence against him at every pretrial hearing he had. *Id.* Plaintiff further alleges that the laptop was also used against him in his plea agreement, presentence report, and sentencing. *Id.* Plaintiff submits these allegations give rise to two Fourth

Amendment violations[1]—that he did not consent to any search or seizure and that the search upon his arrest was unlawful—and he seeks $300 in compensatory damages and $600,000 in punitive damages. *Id.* at 4–5.

Plaintiff appears to be challenging his criminal conviction.[2] However, it is well-settled that a § 1983 action cannot be used to collaterally attack a criminal conviction unless the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Moreover, "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 487. Thus, if a prisoner seeks damages in a § 1983 suit, courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* Plaintiff does not allege that his conviction or sentence has been reversed on direct appeal or otherwise falls outside *Heck*'s bar,[3] and the Court finds that a judgment for Plaintiff would imply the invalidity of his conviction or sentence in his criminal case. In sum, Plaintiff fails to state a claim upon which relief can be granted.

---

[1] Plaintiff also states that he is "asserting the following claims for relief; (1) unreasonable search and seizure without a warrant; (2) probable cause; and (3) exigent circumstances . . . ." The Court construes Plaintiff to mean that these assertions give rise to his alleged Fourth Amendment violations rather than that they, in themselves, are causes of action.

[2] Plaintiff's criminal case number is 2:15-cr-00353-GMN-NJK. The Court takes judicial notice of the documents filed therein. *See* Fed.R.Evid. 201(b)(2) (providing that a court may take judicial notice of adjudicative facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (noting that a court may take judicial notice of federal and state court records).

[3] Indeed, it appears that Plaintiff is still serving his underlying sentence. *See* Docket No. 9 (showing Plaintiff's address to be at a federal correctional institution); *see also United States v. Busby*, 2:15-cr-00353-GMN-NJK, Docket No. 138.

Accordingly, Plaintiff's amended complaint is **DISMISSED** with leave to amend.[4] Docket No. 9. Plaintiff will have until **August 10, 2020**, to file a second amended complaint, if the noted deficiencies can be corrected. If Plaintiff chooses to file a second amended complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (e.g., the original complaint) to make the second amended complaint complete. This is because, generally, an amended complaint supersedes any previous complaint. Local Rule 15-1(a) requires that an amended complaint be complete in itself without reference to any prior pleading. Once a plaintiff files a second amended complaint, any previous complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged. **Failure to comply with this order will result in the recommended dismissal of this case**.

IT IS SO ORDERED.

Dated: July 9, 2020

Nancy J. Koppe
United States Magistrate Judge

---

[4] Given the deficiencies outlined herein, the Court need not opine on whether other deficiencies exist that may also prevent Plaintiff from pursuing his claims through this case.